UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING VERDUZCO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FORD MOTOR COMPANY, *et al.*,<br><br>　　　　Defendants.<br>_____/ | Case No. 1: 13-cv-01437-LJO-BAM<br><br>**FINDINGS & RECOMENDATIONS TO REMAND CASE TO STANISLAUS SUPERIOR COURT** |

## I.　INTRODUCTION

This action arises from a May 19, 2000 motor vehicle accident wherein a 1999 Ford Explorer struck the rear end of a 1993 Ford Taurus. Plaintiff Irving Verduzco was a passenger in the Taurus at the time of the crash and had no relationship with any of the owners, occupants or driver of the Explorer. Plaintiff sued the drivers of both vehicles under negligence theories, and on February 23, 2001, the San Joaquin Superior Court approved a settlement between these parties.

Plaintiff initiated this action against Defendants Ford Motor Company and Heritage Ford, Inc. (the seller of the Explorer) on May 8, 2007 in the County of Stanislaus Superior Court. Defendant Ford was served with the complaint on July 20, 2007. (Doc. 1.) Plaintiff alleges the Defendants are liable for the May 19, 2000 accident under theories of general negligence and product liability. (Doc. 1, Attach. 1.) After several continuances, a trial was set for September 10, 2013. After the case had

been pending for six years and on the eve of trial, Defendants removed this action to this Court on September 9, 2013.  (Doc. 1.)

Defendants claim removal is proper pursuant to 28 U.S.C. § 1441, and that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff is a resident of Stanislaus County, in the State of California.  Defendant Ford Motor Company is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in the State of Michigan.  The parties do not specify Defendant Heritage's place of incorporation or principle place of business, but the parties' briefing demonstrates their agreement that Heritage is a resident of California for diversity purposes.

Ford contends that diversity jurisdiction exists in this action under the doctrine of fraudulent joinder.  Specifically, Ford alleges that the joinder of Heritage was fraudulent because Plaintiff lacks a reasonable basis to support his claims against Heritage.  Accordingly, Heritage's citizenship is disregarded in determining whether this Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Ford also claims it could not have removed this case earlier, because it was not until September 6, 2013, that Ford learned Plaintiff was abandoning his claims against Heritage; thus, confirming Ford's suspicion that Heritage was fraudulently joined to prevent removal.

On September 13, 2013, Plaintiff filed a motion to remand to Stanislaus Superior Court.  (Doc. 10.)  Plaintiff argues that even if Heritage was fraudulently joined (which Plaintiff disputes), removal was improper because it was not filed timely under 28 U.S.C. § 1446.  Ford filed its opposition on September 27, 2013.  (Doc. 11.)  Plaintiff filed his reply brief on October 11, 2013.  (Doc. 13.)  The Court found the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and vacated the hearing set for October 18, 2013.  (Doc. 14.) Having carefully considered the parties' submissions and the entire record in this case, the Court recommends this case be remanded to Stanislaus Superior Court.

/././

## II. DISCUSSION

**A.     Legal Standard on Motion to Remand**

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (internal citations omitted).

An exception to the requirement of complete diversity exists where a defendant has been fraudulently joined to defeat diversity. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is deemed fraudulent." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987)). Where joinder is deemed fraudulent, the defendant's presence is ignored for the purposes of determining diversity. *Morris,* 236 F.3d at 1067. The claim of fraudulent joinder must be supported by "clear and convincing evidence." *Hamilton Materials, Inc.,* 494 F.3d at 1206. The party seeking removal bears a heavy burden in proving that joinder of the in-state defendant is improper. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009).

As an initial matter, "[f]raudulent joinder is a term of art," *McCabe,* 811 F.2d at 1339, and it "does not require a finding of fraudulent intent," *Schwenn v. Sears, Roebuck & Co.*, 822 F.Supp. 1453, 1455 (D. Minn. 1993). Thus, rather than focusing on the "mental state" of the plaintiff, the fraudulent

joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant. *Davis v. Prentiss Properties Ltd., Inc.,* 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999).

In addressing the issue of fraudulent joinder, the Ninth Circuit looks to whether the facts in the complaint would preclude the plaintiff's recovery against the non-diverse defendant. *See Morris,* 236 F.3d. at 1067-68 ("abundantly obvious that [plaintiff] could not possibly prevail on her negligent representation claim"). Courts in the Ninth Circuit must find that it is "indisputably clear" that the plaintiff will be unable to state a cause of action against the non-diverse defendant in state court. *See Tahoe Keys Marina & Yacht, LLC v. Merkelback*, No. 2:12-cv-02582-GEB-AC, 2013 WL 221510, at *1 (E.D. Cal. Jan. 18, 2013). It is not for the court to determine if the plaintiff will prevail on the merits of the claim, but to evaluate whether there is any possibility that the plaintiff may prevail. *Board of St. Mary's Holy Apostolic Catholic Church of the East v. Addai*, No. 1:12-cv-1448-AWI-BAM, 2012 WL 4764411, at *2 (E.D. Cal. Oct. 5, 2012). If there is any possibility that the plaintiff would be able to establish liability against the defendant the joinder is not fraudulent. *Bear Valley Family v. Bank Midwest, N.A.*, 2010 WL 3369600, at *2 (C.D. Cal. Aug. 23, 2010).

The procedure and time limitations for removing a case are provided in Section 1446. The applicable version of former Section 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir. 1998), quoting 28 U.S.C. § 1446(b).[1]

---

[1] The Court does not apply the current version of Section 1446. On December 7, 2011, Section 1446 was amended to include a "bad faith" exception to the one-year limitation on removal for claims that

4

Plaintiff's Motion to Remand implicates both procedural and substantive aspects of removal. Plaintiff argues Ford's removal was not timely under Section 1446(b), and further argues this Court lacks jurisdiction because this case presents claims between non-diverse parties. Ford responds there is complete diversity because Heritage is fraudulently joined in this action, thus, Heritage is not considered in the diversity analysis. Ford further argues that the doctrine of fraudulent joinder abrogates the time limits on removal proscribed in Section 1446(b). Explained in greater detail below, Ford's removal is foreclosed by the time constraints of Section 1446(b) and, further, Ford has failed to meet its burden of establishing Heritage is a sham defendant.

### B.     Defendant's Removal Was Not Timely

Defendant argues that, under Ninth Circuit law and Section 1446, "if the only nondiverse defendant was fraudulently joined, removal is proper whenever that becomes known – including on the eve of trial." Doc. 11, 1: 12-13. In other words, the time limits proscribed by Section 1446 are inapplicable in cases of fraudulent joinder. Plaintiff responds that under Section 1446 and Ninth Circuit authority, fraudulent joinder cases are treated as instances where the case was "initially removable;" thus, Ford would have had thirty days from the date Ford was served with the complaint to remove the case to federal court. Alternatively, Plaintiff argues, even if this case were not treated as initially removable, Ford would have had to remove within one year of the case being filed. Plaintiff additionally argues there are no judicially-created exceptions to the time limits proscribed by Section 1446. Both parties rely upon *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir. 1998) in support of their respective positions.

In *Ritchey,* the plaintiff sued a drug manufacturer along with a non-diverse doctor and health care entity. The *Ritchey* plaintiff filed the action on January 3, 1994, however, did not give notice of

---

were initially not removable. *See,* 28 U.S.C. § 1446(c) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."); *see also,* Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112-63, December 7, 2011, 125 Stat 758. This amendment, however, does not apply to any cases "commenced" in state court prior to January 6, 2012. *See, Id.* at PL 112-63, December 7, 2011, 125 Stat 758, Sec. 205 ("The amendments made by this title … shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act [December 7, 2011].") Ford agrees that the pre-December 7, 2011 version of Section 1446 applies to Ford's Notice of Removal. Doc. 11, fn. 2.

1  the action to defendants until "sometime in December of 1995." *Id.* at 1315. On January 29, 1996,
2  more than a year after the complaint was filed, the defendants removed the action to federal court
3  despite a lack of complete diversity, arguing fraudulent joinder.[2] *Id.* The plaintiff challenged the
4  propriety of removal, arguing that removal was precluded by the time limitations of Section 1446(b).

The starting point for *Ritchey's* analysis was that Section 1446(b) contained two paragraphs proscribing different time limits on removal depending on the circumstances. The first paragraph permitted removal within thirty days of the complaint being served on the removing party. The second paragraph permitted removal when the case was not initially removable; however, subsequent developments make the case removable. Under the latter circumstance, removal is permitted within one year of the case being filed. The plaintiff in *Ritchey* argued the one-year limitation applied to both paragraphs. In other words, the *Ritchey* plaintiff argued that regardless of when service was affected, the one-year limitation operated against all instances of removal – even if a complaint was not served until after a year had passed since the case was filed.

The *Ritchey* court rejected plaintiff's argument and found the one-year time limit on removal in the second paragraph of Section 1446(b) did not infringe on a defendant's right to remove within thirty days of being served with a complaint:

> [T]he most sound reading of a sentence will refer its limiting clause back to the antecedent clause to which it is attached, and not to other paragraphs or sentences in the statute. *See Pacificorp v. Bonneville Power Admin.*, 856 F.2d 94, 97 (9th Cir.1988). ("The date limitation ... refers directly back to the antecedent phrase...."); *Zogbi v. Federated Dep't Store, 767 F.Supp.* 1037, 1039 (C.D.Cal.1991) ("The general rule is that a qualifying phrase or clause only modifies that which immediately precedes it.")
>
> We see no reason to deviate from that mode of reading here. The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception.

*Ritchey,* 139 F.3d at 1316.

---

[2] On appeal, the *Ritchey* plaintiff argued the case was not removed within the required thirty-day period. *Id.* at 1315, fn. 3. However, the Ninth Circuit held the plaintiff waived that issue by failing to timely raise it, and proceeded under the assumption that the defendants removed the case within thirty days of being served pursuant to Section 1446(b). *Id.*

*Ritchey* also discussed how other courts have determined the one-year limitation applies to both paragraphs. *Id.* 1317. According to *Ritchey,* a misconstruction of Section 1446(b) led some court to apply an equitable estoppel doctrine to permit removal after one year had passed because "[i]n that way, [these courts] have attempted to ameliorate the fact that on their construction of § 1446(b), a plaintiff need only file an action in state court and then wait one year before service, if he wishes to deprive the defendant of the ability to remove under any circumstances." *Id.* at 1318. However, by concluding the first paragraph of Section 1446(b) was not susceptible to the one-year limitation, *Ritchey* concluded such equitable exceptions were unnecessary. *Id.*

Once *Ritchey* concluded the one-year limitation did not apply to service of the initial pleading, the question became "whether the action was removable under the first paragraph of § 1446(b), or to put it another way, whether there was diversity jurisdiction based upon the initial pleading …" *Id.* at 1318. *Ritchey* noted that while "[t]he existence of diversity jurisdiction certainly does not appear on the face of Ritchey's complaint[,]" defendants argued certain individuals "were fraudulently joined or sham defendants." *Id.* The *Ritchey* court agreed, concluding that the plaintiff had failed to state a cause of action against the non-diverse defendants. *Id.* at 1319. Accordingly, *Ritchey* found removal proper because the notice of removal was filed within thirty-days of the defendant being served with the complaint containing fraudulently joined defendants.

Ford concludes that "under *Ritchey*, there is no one-year limit to removals under a fraudulent joinder theory." Doc. 11, 8: 15-16. While Ford correctly notes that under *Ritchey* the one-year limitation proscribed in the second paragraph of Section 1446(b) does not apply to instances of fraudulent joinder, Ford mistakenly suggests *Ritchey* eliminates the time constraints on removal altogether. On the contrary, *Ritchey* applied the time constraints found in the first paragraph of Section 1446(b), which require an initially removable complaint be removed within thirty days of service. *Id.* at 1318. The logic underlying this conclusion is straight-forward: under the fraudulent joinder doctrine, sham defendants cannot destroy diversity for subject matter jurisdiction or removal purposes. Thus, cases involving fraudulent joinder do not "become removable," but rather, are "initially removable." *Id.* at 1316-19. Pursuant to Section 1446(b) and *Ritchey,* Ford was required to seek removal within thirty days of being served with Plaintiff's complaint.

7

1 Ford cites to several other cases that do not support its position. Ford cites *United Computer Systems, Inc. v. AT&T Corp.,* 298 F.3d 756 (9th Cir. 2002) for the proposition that "the thirty-day time limits prescribed in Section 1446(b) will be ignored when removal is sought on the ground that some defendants have been joined fraudulently to prevent removal." *United Computer Systems,* however, did not concern a circumstance where the removing defendant was served and failed to remove the case within thirty days of service. Rather, *United Computer Systems* addressed the "first-served" rule, where the removal period in a case involving multiple defendants commences with service on the first party. *Id.* at 762. In *United Computer Systems*, the fraudulently joined defendant was first-served, and the removing defendants had no notice of the action at that time. *United Computer Systems* held that "[i]f the fraudulence of a defendant's joinder is irrelevant for purposes of determining diversity, and there is no obligation to join such a defendant in a removal petition, there is no good reason why date of service on a fraudulently joined defendant should commence the thirty-day time period for removal under § 1446(b)." A contrary result "would encourage unfair litigation tactics," because a plaintiff could avoid removal by withholding service on diverse defendants for thirty days. *Id.* at 763. Contrary to Ford's reading, *United Computer Systems* does not eliminate the time limitations for removal in cases of fraudulent joinder. Rather, *United Computer Systems* holds the time limitation begins with service on a diverse defendant, rather than a fraudulently joined defendant.

Ford next cites to *Boles v. Land Rover North America,* 2012 WL 1997214 (N.D. Cal. 2012) and asserts the *Boles* court found "fraudulent joinder and den[ied] remand following more than two years into the case after Land Rover pointed out at CMF/ECF No. 5 that under *Ritchey* no one-year limit applies to fraudulent joinder removals."

*Boles* made no such finding. *Boles* did not discuss the one-year limit on removal, nor did *Boles* conclude that under *Ritchey* the one-year limit is inapplicable to fraudulent joinder. Rather, *Boles* found that the plaintiff had waived any defects in the notice of removal by failing to move to remand within thirty-days. *Id.* at *2, fn. 3. *Boles* then went on to discuss the issue of fraudulent joinder with respect to the court's continuing subject matter jurisdiction, but not in the context of whether removal was proper in the first instance. At that point, *Boles* relied upon *Ritchey* for the common notion that a fraudulently joined defendant may be disregarded for purposes of determining

8

diversity. *Id.* at *2-3. *Boles* did not find that fraudulent joinder creates an exception to the time limitations on removal.

Lastly, Ford cites to *Roth v. CHA Hollywood Medical Center, L.P.,* 720 F.3d 1121, 1126 (9th Cir. 2013), claiming the Ninth Circuit held that "where the one year limitation on removal under 28 U.S.C. § 1446 does not apply, such as in the CAFA context (just like with fraudulent joinder removals), then a defendant can time a removal based on its own investigation whenever it likes, including the 'eve of trial in state court.'" *Id*. at 1126.

The Court disagrees with Ford's reading of *Roth*. On the contrary, *Roth* recognized that the only instance in which the time limitations of Section 1446(b) do not apply arise specifically in the context of CAFA diversity cases because CAFA explicitly declined to impose such a time limit:

> We discern one practical objection to our reading of §§ 1441 and 1446(b). It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the "initial pleading" nor any later document received from plaintiff triggers one of the two thirty-day periods. In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so. *In a non-CAFA diversity case, the advantage gained through such gamesmanship is limited by the fact that a notice of removal must be filed, in any event, within one year of the commencement of the action.* See 28 U.S.C. § 1446(c)(1). However, in a CAFA case, there is no such time limit. A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered. See 28 U.S.C. 1453(b).

*Roth,* 720 F. 3d at 1126 (emphasis added); *see also,* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with Section 1446 (except that the 1-year limitation under Section 1446(c)(1) shall not apply) . . . .").

Other district courts have interpreted Ninth Circuit precedent as this Court does: there are no equitable exceptions to the time limits imposed under Section 1446(b). *See, e.g., Blue v. Equifax Info. Servs., LLC,* C 06-06349 JSW, 2007 WL 602295 (N.D. Cal. 2007) ("The Ninth circuit has not recognized an exception, the statute does not contain an exception, and the Ninth circuit narrowly construes removal statutes against removal. As such, this Court will not recognize an exception to the clear statutory language of 1446(b)"); *Selman v. Pfizer, Inc.,* 11-cv-1400-HU, 2011 WL 6655354 (D. Or. 2011) ("Ninth Circuit precedent suggests that their claim of fraudulent joinder should be time-barred by the thirty-day limit set forth in Section 1446(b)'s first paragraph."); *see also, Bay Guardian*

*Co., Inc. v. Vill. Voice Media LLC,* C 09-03833 JSW, 2010 WL 329962 (N.D. Cal. 2010). Thus, this Court rejects Ford's argument that there are no time limits for removing complaints containing fraudulent joinder.

Accordingly, this Court finds that Ford's removal was not timely and the case should be remanded.

**C.     Ford Did Not Meet Its Burden To Demonstrate Fraudulent Joinder**

The Court has concluded Ford's notice of removal is not timely and remand is proper. Thus, the Court will not go into great detail discussing whether Heritage is a fraudulently joined defendant, i.e., whether Plaintiff has "clearly" failed to state a claim against Heritage. It is notable, however, that even if Ford's removal were timely, Ford's briefing effectively concedes that Heritage was not fraudulently joined.

In a nutshell, Ford's primary argument concerning its six-year delay in seeking removal is that it was unaware Plaintiff lacked sufficient evidence to substantiate its claims against Heritage until Plaintiff submitted pretrial filings revealing that Plaintiff would not be pursuing a claim against Heritage. Doc. 11, 9: 11-14. Ford argues that until that time, it could not have removed this case because Plaintiff pled a "colorable" claim for negligence against Heritage:

> In short, the only possible claim against Heritage that had not been ruled out was one for Negligence . . .
>
> Plaintiff misses the fact that *he had stated a negligence claim; a potentially valid claim* for a used car sale if there were any modifications made or obvious defects that should have been discovered upon a reasonable inspection. The question remained whether Plaintiff had any evidentiary basis for these claims—that is, whether Plaintiff's experts could identify any negligence such as a defect in the Explorer that Heritage should have discovered with a reasonable inspection, and which Plaintiff's experts could causally connect to Plaintiff's injuries. Given the fraudulent joinder standards*, even though Plaintiff did not have a colorable strict liability claim, he still had, at that time, a potentially colorable negligence claim*, (assuming an evidentiary basis).

Doc. 11, 12: 22-23; 14: 12-17 (emphasis added.)  Ford suggests that Plaintiff's lack of evidence to substantiate its claims against Heritage, coupled with his subsequent decision to abandon claims against Heritage, demonstrate Plaintiff never had any intent to prosecute claims against Heritage. According to Ford, this circumstance reveals that Heritage was fraudulently joined.

1 Putting aside the sufficiency of Plaintiff's claims against Heritage, Ford has failed to meet its burden to demonstrate fraudulent joinder. *Hamilton Materials, Inc.,* 494 F.3d at 1206 (the claim of fraudulent joinder must be supported by "clear and convincing evidence.")  First, as a practical matter, Ford's concession that Plaintiff pled "colorable" claims for negligence effectively concedes Plaintiff "stated a claim" against Heritage. *NetVersant-Nat., Inc.,* 2007 WL 4326754 (N.D. Cal. 2007) ("The fact that NetVersant concedes that Cava asserted a colorable, though weak, claim against Wainwright up to the moment of adverse summary adjudication is significant"); *see also, Rozier v. Corrections Corp. of America,* 2013 WL 4407492 (S.D. Cal. 2013) ("Courts generally apply a presumption against fraudulent joinder.")

Second, Ford's focus on "Plaintiff's intent" to abandon his negligence claims against Heritage at the last minute, or whether Plaintiff could develop sufficient evidence to support the negligence claim is misplaced.  The Ninth Circuit has repeatedly stated that joinder is fraudulent "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state*." Mercado v. Allstate Ins. Co*., 340 F.3d 824, 826 (9th Cir. 2003) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). In another formulation, courts have stated that "[t]he standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is any possibility that they may do so." *Bellecci v. GTE Sprint Commc'ns. Corp.,* 2003 WL 151538 at *3 (N.D. Cal. 2003) (citation omitted; emphasis added); *see also Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1068 (9th Cir. 2001). It does not matter if Plaintiff's claim is weak, lacks sufficient evidence or if Plaintiff has no intention to actually litigate the claim.[3]  If there is any possibility that the plaintiff could establish liability against the defendant, the joinder is not

---

[3] Defendant cites several out-of-circuit authorities in support of its position that "[a] definitive indication that the plaintiff intends to abandon his action against a nondiverse defendant is key evidence allowing a fraudulent joinder removal." Doc. 11, 6: 22-25, *citing Rauch v. Rauch*, 446 F. Supp. 2d 432 (D.S.C. 2006); *Ramirez v. Michelin N.A., Inc*., No. 07cv228, 2007 WL 2126635, at *3 (S.D. Tex. July 19, 2007); *Aydell v. Sterns*, 677 F. Supp. 877, 880 (M.D. La. 1988).  These authorities, however, are contrary to the law of this Circuit.  In the Ninth Circuit, the core inquiry is whether Plaintiff could establish liability against the non-diverse defendant under *any* theory, even if the plaintiff is not likely to do so. *Bear Valley Family v. Bank Midwest, N.A*., 2010 WL 3369600, at *2 (C.D. Cal. Aug. 23, 2010)

fraudulent. *Bear Valley Family v. Bank Midwest, N.A.*, 2010 WL 3369600, at *2 (C.D. Cal. Aug. 23, 2010).

Accordingly, Ford has not met its burden to demonstrate Heritage was fraudulently joined.

### D.      Attorney's Fees

Plaintiff requests the costs and fees Plaintiff incurred as a result of Ford's improper removal. A court that remands a case to state court based on improper removal "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). However, "bad faith need not be demonstrated" for a court to award fees and costs on remand. *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 448 (9th Cir. 1992).

The Court finds an award of fees and costs proper because Ford lacked an objectively reasonable basis for removal. Ford cites, yet ignores, Ninth Circuit authority holding the core inquiry under the fraudulent joinder doctrine is whether a plaintiff can conceivably state a claim against a non-diverse defendant. Moreover, Ford concedes Plaintiff asserted colorable claims against Heritage. Further, Ford stitched together an untenable argument concerning the timing of removal that is unsupported by Ninth Circuit authorities. Thus, Ford lacked an objectively reasonable basis for removal.

Further, Ford's timing of removal – on the eve of trial, following six years of litigation – strongly indicates Ford improperly sought removal to prolong this litigation. Thus, this Court also finds that "unusual circumstances" justify an award of fees and costs. *See Community First Credit Union Inc. v. Chandler,* 2010 WL 5088230 (N.D. Cal. 2010) (awarding fees and costs on remand where "[t]he timing of the removal on the day of trial, as well as the complete baselessness of the removal, demonstrate that defendant has acted in bad faith and to delay the state court action"); *Ciolino v. Ryan,* 2003 WL 21556959 (N.D. Cal. 2003) ("the improper removal undoubtedly has had the effect of postponing the trial of this action in state court, a fact on which at least one court has

based an award of fees and costs under section 1447(c)," citing *Elsis v. Hertz Corp.,* 581 F. Supp. 604, 608 (E.D. N.Y. 1984) (finding that the "eve of trial removal served to delay timely litigation of this matter")); *see also, Peabody v. Maud Van Cortland Hill Schrol Trust*, 892 F.2d 772, 777 (9th Cir.1989) (holding that a removal made for the transparent purpose of delaying an impending trial "demonstrates a flagrant misuse of the judicial process").

Plaintiff will be ordered to file an affidavit supporting its application for attorneys' fees and costs relating only to the issue of fees and costs in opposing removal and seeking remand. *See* 28 U.S.C. 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") The Court will retain jurisdiction following remand to resolve the award of attorneys' fees and costs. *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 445 (9th Cir.1992) (district court may retain jurisdiction over attorneys' fees issue after remand).

## RECOMMENDATIONS AND ORDER

For the reasons discussed above, this Court RECOMMENDS the following:

1. Plaintiff's Motion to remand be GRANTED and this case be REMANDED to the Superior Court of California, County of Stanislaus;

2. Plaintiff's requests for fees and costs be GRANTED.  No later than November 15, 2013, Plaintiff shall file an affidavit supporting his application for attorneys' fees and costs.  Ford shall file an opposition no later than December 2, 2013, 2013.  Plaintiff shall file his reply no later than December 9, 2013. The Court will rule on the matter without oral argument unless oral argument is deemed necessary after reviewing the parties' briefs.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the

United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **October 22, 2013**        /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE